IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RIO GRANDE GAMES, INC.

Plaintiff,

v.                                                    No. CIV 13-985 JAP/KBM

HANS IM GLÜCK VERLAGS GmbH,

Defendant

**MEMORANDUM OPINION AND ORDER**

The MOTION OF DEFENDANT HANS IM GLÜCK VERLAGS GmbH TO DISMISS

THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION and supporting

MEMORANDUM (Motion to Dismiss) (Doc. Nos. 8; Doc. No. 9 at 10) ask the Court to dismiss

Plaintiff Rio Grande Games, Inc.'s COMPLAINT FOR BREACH OF CONTRACT (Complaint)

(Doc. No. 1) with prejudice in accordance with Fed. R. Civ. P. 12(b)(2).

PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S

MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (Response) (Doc. No.

14) argues that the Court has general or specific personal jurisdiction over Defendant.

DEFENDANT'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS THE

COMPLAINT FOR LACK OF PERSONAL JURISDICTION (Reply) (Doc. No. 20) asserts that

Defendant's contacts with New Mexico cannot support general jurisdiction and that Plaintiff

failed to establish the requirements for specific jurisdiction.[1]

---

[1] PLAINTIFF'S REQUEST FOR LEAVE OF COURT TO FILE A SURREPLY (Doc.
No. 22) will be denied as moot based on the Court's ruling on the Motion to Dismiss.

In support of Defendant's position, Moritz Brunnhofer, the Managing Director of Defendant, provided an affidavit describing Defendant's business activities in relation to allegations in the Complaint.  (Mr. M. Brunnhofer Aff.) (Doc. No. 10).  Defendant also attached a copy of the executed Agreement at issue in both English and German.  (Agreement) (Doc. No. 10-1.)

Jay Tummelson, the founder, co-owner and president of Plaintiff supplied a declaration concerning contacts and communications Plaintiff had with Defendant.  (Mr. Tummelson Decl.) (Doc. No. 16).  Plaintiff also provided a copy of the same Agreement in English (Doc. No. 17) and copies of some email correspondence between the two businesses. (Doc. No. 18.)

After careful consideration of the pertinent legal standards, pleadings and argument, sworn affidavit statements, and other evidence, the Court concludes that it has personal jurisdiction over Defendant and that, therefore, Defendant's Motion to Dismiss should be denied.

### *Introduction*

On October 9, 2013, Plaintiff filed a Complaint against Defendant alleging breach of contract.  More specifically, the Complaint asserts that in 2008, Plaintiff, a New Mexico business, entered into a written Agreement with Defendant, a German company, under which Plaintiff licensed Defendant to sell Plaintiff's card game "Dominion" in the German language. Complaint at ¶¶ 1, 2, 5.  Plaintiff contends that the Agreement has terminated and that Defendant breached the Agreement by failing to pay Plaintiff a total sum of $78,142.53.  *Id.* at ¶ 7. Defendant argues that Plaintiff made invoicing and accounting errors and that Plaintiff actually owes Defendant an unspecified amount of money.  Motion to Dismiss at 2.

On January 31, 2014, Defendant filed a Motion to Dismiss for lack of personal jurisdiction arguing that it has very few contacts with New Mexico and that the majority of

Defendant's activities involving the Agreement took place in Germany.  In addition, Defendant contends that subjecting it to either general or specific personal jurisdiction would violate due process concerns.

In support of Plaintiff's position that the Court may exercise either general or specific personal jurisdiction over Defendant, Plaintiff relies on a 15-year "long-standing relationship" with Defendant during which both companies distributed each other's games.  Plaintiff asserts that these business interactions involved numerous communications by mail, email, and telephone between their respective office locations.  Response at 1.

### *Background*

Mr. Tummelson's Declaration and the Parties' Written Agreement

In 1998, Mr. Tummelson formed the Plaintiff company to publish board and card games. Tummelson Decl. at ¶ 2.  Since its inception, Plaintiff has conducted its business from Mr. Tummelson's home, first in Rio Rancho, New Mexico, and later in Placitas, New Mexico.  *Id.* at ¶ 7.  Plaintiff has published hundreds of board and card games that are sold by online retailers in the United States, the English-speaking world, and many foreign countries.  *Id.* at ¶ 2.  In 2008, Plaintiff began to publish Dominion, the game at issue in this breach of contact action.  Several versions of Dominion have been and are being sold worldwide, and it has been translated into 20 languages.  *Id.* at ¶ 3.

Before forming his company, Mr. Tummelson was employed by another game publisher in the Chicago area.  *Id.* at ¶ 4.  During his earlier employment, Mr. Tummelson met and had business dealings with Bernd Brunnhofer (Mr. B. Brunnhofer), who is Mr. M. Brunnhofer's father.  *Id.* at ¶ 19.  Mr. Tummelson understood Mr. B. Brunnhofer was the principal owner of Defendant, a family-owned business.  *Id.* at ¶ 4.   After Mr. Tummelson formed his company in

New Mexico, he continued for 15 years to have dealings with Mr. B. Brunnhofer and Mr. B. Brunnhofer's company.  During those years, Mr. Tummelson sometimes met Mr. B. Brunnhofer at trade shows in the United States or at the Defendant's offices in Germany.  From time to time, Mr. B. Brunnhofer came to the United States on business or to attend conferences but he did not physically come to New Mexico.  *Id.* at ¶¶ 5, 9.

During the first few years of Plaintiff's existence, Defendant entered into licenses with Plaintiff authorizing Plaintiff to distribute English-language versions of Defendant's German-language games in the United States.  *Id.* at ¶ 6.  These licensing agreements were arranged in face-to-face meetings between Mr. Tummelson and Mr. B. Brunnhofer and/or by mail or telephone communications between Defendant's business office and Plaintiff's business office.  During these business dealings, Defendant sent Plaintiff, at its New Mexico office, license agreements for various games of Defendant.  *Id.*  Defendant sent to Plaintiff game files and proofs that Plaintiff had translated into English.  *Id.*; Response at 7.  Plaintiff then returned the English-language versions of the games to Defendant in Germany.  Defendant had the games printed in English, and Plaintiff made arrangements for shipment of the English-translated games to Plaintiff's warehouse in Wisconsin.  Plaintiff contracted with others to distribute the games in the United States and elsewhere.  Mr. Tummelson Decl. at ¶¶ 6, 10.

Over the past 15 years, Plaintiff distributed many of Defendant's games, translated into English, and between 2008 and 2013, Defendant has distributed the German-language version of Plaintiff's Dominion game.  *Id.* at ¶ 8.  During Plaintiff's 15-year period of business dealings with Defendant, Mr. Tummelson and Defendant's representatives communicated regularly by telephone and email between the two companies' business offices.  *Id.* at ¶ 9.  Mr. Tummelson communicated primarily with Mr. B. Brunnhofer, and occasionally with several of Defendant's

employees who he named.  Mr. Tummelson estimated that he spoke to an employee of Defendant from five to ten times a year and that they "exchanged dozens of emails a month over the course of our dealings." *Id.*  The parties executed contracts and exchanged them, typically by mail, fax, or email. *Id.*

From 1998 to 2012, Plaintiff's total sales to its United States' distributors of Defendant's games approached $20 million.  The total of Plaintiff's remittances to Defendant, inclusive of production costs for which Plaintiff was billed, was about $5 million. *Id.* at ¶ 10.  Plaintiff distributed approximately 80 different games of Defendant, of which the most well known was "Carcassonne." *Id.* at ¶ 11.  Plaintiff distributed well over one million units of various versions of Carcassonne in the United States during its dealings with Defendant. *Id.*

In 2008, Mr. Tummelson attended a trade event in Columbus, Ohio, where he remembers meeting with two of Defendant's representatives, although he did not recall whether Mr. B. Brunnhofer was in attendance. *Id.* at ¶ 13.  Mr. Tummelson showed Defendant's representative a prototype of Plaintiff's new game Dominion. *Id.*

Upon returning to New Mexico, Mr. Tummelson received a telephone call from Mr. B. Brunnhofer at the telephone number Mr. Tummelson used for Plaintiff's business.  Mr. B. Brunnhofer asked Mr. Tummelson if Defendant could license Dominion for distribution in Germany after translation into the German language. *Id.* at ¶ 14.  Upon Mr. B. Brunnhofer's request, Mr. Tummelson sent Mr. Brunnhofer a contract form to accomplish the licensure, similar to agreements the parties had executed previously for Defendant's games that Plaintiff distributed. *Id.*

The 2008 Agreement provides, in part, that Plaintiff licensor granted to Defendant licensee an exclusive license to produce and sell Dominion in the German language.  Plaintiff

agreed to provide Defendant with all files needed in the game, and Defendant agreed to use the files to translate the game into German.  Defendant would return the translated files to Plaintiff for printing, and Plaintiff arranged to print the game using the files provided by Defendant.  Agreement at ¶¶ 1, 2 (Doc. No. 10-1).  When printing was completed, Defendant arranged for the shipping of the games to its facilities in Germany, and Plaintiff invoiced Defendant for the license fees and printing costs.  Mr. Tummelson Decl. at ¶ 16.

The Agreement was effective from July 1, 2008 to June 20, 2013, unless Defendant discontinued sales of Dominion.  Thereafter, the Agreement would be renewed automatically from year to year unless one of the parties gave notice six months in advance that it wished to terminate the arrangement.  According to the Agreement, Defendant would send Plaintiff annual accounting statements no later than 60 days after each year-end, showing the number of units sold during a year.  Agreement at ¶¶ 4, 5.

The Agreement contemplated termination under certain scenarios and prohibited transference of the license.  *Id.* at ¶¶ 6-8.  The last paragraph of the one-page Agreement provides that "This agreement will be interpreted in accordance with the laws of the UNITED STATES OF AMERICA, state of NEW MEXICO."  *Id.* at ¶ 9 (emphasis in original).  The Agreement was signed on September 1, 2008 by both Mr. B. Brunnhofer and Mr. Tummelson.

After Mr. B. Brunnhofer executed and returned the Agreement to Mr. Tummelson, Mr. B. Brunnhofer contacted Mr. Tummelson several times during the Summer or Fall 2008 and into early 2009 about changes Mr. Brunnhofer wanted to make to the version of Dominion that Defendant was licensing.  Mr. Tummelson Decl. at ¶ 15.  Mr. B. Brunnhofer spoke to Mr. Tummelson on Plaintiff's New Mexico business telephone, although Mr. B. Brunnhofer also corresponded to Mr. Tummelson's email address in New Mexico.  *Id.*  Mr. B. Brunnhofer

requested a number of changes to Dominion, some of which Mr. Tummelson agreed to and some of which he did not.  *Id.*

From 2008 until the termination of Plaintiff's license to Defendant in 2013, Defendant distributed German-language versions of Dominion in several countries and sold in excess of 480,000 units of Dominion during that period.  *Id.* at ¶ 16.  The total of Plaintiff's invoices in connection with Defendant's distribution of Dominion was approximately 8 million dollars.  *Id.*

From 2008 through 2010, Defendant's representative attended the annual gaming industry conference in Columbus, Ohio.  In 2011 and 2012, the conference was held in Niagara Falls, New York.  During these conferences, Mr. Tummelson discussed specific business issues with Defendant's representative, including marketing and selling the parties' games.  *Id.* at ¶ 17.

Mr. Tummelson reviewed Mr. M. Brunnhofer's affidavit in support of the Motion to Dismiss but stated, to the best of his knowledge, that Mr. M. Brunnhofer did not play a significant role in Defendant's business until the last few years when Mr. M. Brunnhofer assumed responsibility for Defendant's dealings with Plaintiff.  *Id.* at ¶ 19.  Mr. Tummelson met Mr. M. Brunnhofer on several occasions, including at the April 2012 gaming conference in Niagara Falls.  Mr. Tummelson's communications with Mr. M. Brunnhofer during the past year or so have primarily been by email and have focused on Mr. M. Brunnhofer's ideas for promotion of the German-language version of the Dominion game.  *Id.*

Plaintiff attached three emails from 2012 between Mr. Tummelson and Mr. M. Brunnhofer.  Contrary to Mr. M. Brunnhofer's assertions in his affidavit that he communicated in German, these emails from Mr. M. Brunnhofer to Mr. Tummelson are in English.  M. Brunnhofer Aff. at ¶ 13; Doc. No. 18, Ex. B.  The three email communications address matters

of payment and outstanding orders for Dominion.  *See* Doc. 18, Nov. 2, 2012 email ("If Schmidt does not get the games very soon, they will have big problems selling any Dominion game.").

The dispute between Plaintiff and Defendant that is the subject of this lawsuit concerns monies that Plaintiff claims it is owed arising from Defendant's licensure to distribute Dominion. Mr. Tummelson Decl. at ¶ 18.  Mr. Tummelson agrees that Defendant wired payments related to the sales of Dominion to a German bank account in Germany held for Plaintiff.  *Id.* at ¶ 20.  Mr. Tummelson explained this was done at Mr. B. Brunnhofer's request to facilitate Plaintiff making payments to Defendant and to avoid the need for Defendant to engage in foreign currency transactions.  Plaintiff agreed to open a bank account in Germany to accommodate Mr. B. Brunnhofer's request.  The records of those banking transactions are in Plaintiff's possession in New Mexico.  *Id.*

### M. Brunnhofer's Affidavit and the Parties' Written Agreement

Defendant is a small publisher of board and card games in Germany that publishes original German-language games and licensed German translations of other companies' games for the German market.  Motion to Dismiss at 1.  Mr. M. Brunnhofer is the Managing Director of Defendant, a limited liability corporation organized under the laws of Germany, whose principal place of business and only office is in Munich, Germany.  Mr. M. Brunnhofer Aff. at ¶ 2. Defendant has no offices, agents, warehouses, or business operations in New Mexico.  *Id.* at ¶ 3. None of Defendant's representatives, employees, or agents has ever visited Plaintiff in New Mexico, and no agent of Defendant has ever entered New Mexico.  *Id.* at ¶ 4.  Mr. M. Brunnhofer met Mr. Tummelson on one occasion in Niagara Falls, New York.  *Id.*  Defendant has no bank account in New Mexico and neither leases nor owns property in New Mexico.  *Id.* at

8

¶ 5.  It has never registered to do business in New Mexico and pays no taxes in New Mexico.  *Id.* at ¶ 6.

In support of its Motion to Dismiss based on lack of personal jurisdiction, Defendant focuses almost exclusively on its business dealings with Plaintiff in relation to the Dominion game.  Mr. M. Brunnhofer does not address the 15-year history between the companies or his father's earlier business interactions with Mr. Tummelson regarding licensing agreements for other games.  *See* Mr. M. Brunnhofer Aff.   While Mr. B. Brunnhofer, on behalf of Defendant, signed the Agreement with Plaintiff related to Dominion, Mr. B. Brunnhofer did not go to New Mexico to sign or negotiate the Agreement.  *Id.* at ¶ 7.  In addition, although the Agreement has a choice of law provision in favor of New Mexico law, the Agreement does not state that disputes will be decided in New Mexico.  *Id.*

Defendant had a company in Germany manufacture the German translation of Dominion, and Defendant received delivery of Dominion from the German manufacturer.  Defendant never sent Dominion products to New Mexico for sale.  *Id.* at ¶ 8.  Defendant made no payments to Plaintiff in New Mexico under the Agreement and has never sent payments to any New Mexico person or bank.  *Id.* at ¶ 9.  Defendant never audited or reviewed Plaintiff's New Mexico business.  *Id.* at ¶ 10.

To the best of Mr. M. Brunnhofer's knowledge, Defendant has not called Plaintiff at its business number.[2]  Mr. M. Brunnhofer has only contacted Mr. Tummelson on his personal

---

[2] Mr. Tummelson explained that in 2008, related to the conversation for licensure of Dominion, Defendant contacted Mr. Tummelson on the telephone used for Plaintiff's business.  Mr. Tummelson Decl. at ¶ 16.  Mr. Tummelson further noted that his current business telephone is a cellular mobile telephone.  Although Mr. Tummelson previously used a land line telephone for his business, he did not recall which telephones were used in each conversation between Plaintiff and Defendant.  Both telephone numbers had a New Mexico (505) area code.  *Id.*  Based on Mr. Tummelson's declaration, the Court concludes Defendant contacted Mr. Tummelson on a telephone used for Plaintiff's business.

mobile telephone and did not know Mr. Tummelson's location during these calls.  Defendant's

only other contact with Plaintiff has been by letter and email.  *Id.* at ¶ 11.

Defendant has two other contracts with Plaintiff -- one stipulates that disputes will be

decided by German courts in Munich and the other is silent on forum selection.  *Id.* at ¶ 12.

Mr. M. Brunnhofer alleges that Plaintiff made errors in its invoicing and accounting

related to Dominion and that Plaintiff sent Defendant invoices for games not shipped.  Plaintiff

purportedly used the same invoice numbers for different shipments creating confusion with

payments and tax calculations.  *Id.* at ¶ 13.  Mr. M. Brunnhofer has corresponded with Plaintiff

about the alleged accounting problems, which Mr. M. Brunnhofer contends result in Plaintiff

owing Defendant money.

Mr. M. Brunnhofer does not believe it is reasonable for Defendant to be sued in New

Mexico because Defendant's "substantial work under the Dominion contract takes place in

Germany, where we manufacture, warehouse, ship, sell, and pay for the Dominion games." *Id.*

at ¶ 14.

### *Analysis*

Rule 12(b) provides for dismissal of a defendant if personal jurisdiction over the

defendant is absent.  Fed. R. Civ. P. 12(b)(2).  Plaintiff bears the burden of proving grounds exist

for jurisdiction when the defendant contests a court's jurisdictional authority.  *See, e.g.*, *AST*

*Sports Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1056-57 (10th Cir. 2008).  In deciding if it

has personal jurisdiction over a defendant, the court may consider affidavits and other

documentary evidence submitted by the parties.  *TH Agric. & Nutrition, L.L.C. v. Ace European*

*Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007).  When personal jurisdiction is decided in the

preliminary stages of litigation, based on pleadings, attachments, and affidavits, the plaintiff's

burden is "light." *Wenz v. Memory Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995); *see also*

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc*., 514 F.3d 1063, 1069-70 (10th Cir. 2008).

District courts have discretion in determining whether a hearing is necessary to decide a

personal jurisdiction challenge.  *Dudnikov*, 514 F.3d at 1069.  The parties did not request that the

Court conduct a hearing, nor did they ask for jurisdictional discovery.  The Court elects to decide

this matter based on the pertinent law, pleadings, briefing, and evidentiary materials submitted.

Because this is a federal diversity lawsuit, the law of the forum state determines the

court's jurisdiction over a nonresident defendant.  *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159,

1166 (10th Cir. 2011).  The forum state is New Mexico.  Thus, to establish personal jurisdiction

over a foreign litigant two showings must be made:  "first, that the exercise of jurisdiction is

sanctioned by [New Mexico's] long-arm statute; and second, that it comports with the due

process requirements of the Fourteenth Amendment."  *See id.* (citation omitted).  *See also*

*Fireman's Fund Ins. Co. v. Thyssen Min. Constr. of Canada, Ltd.*, 703 F.3d 488, 492-93 (10th

Cir. 2012) (citation omitted) (interpreting New Mexico law) ("Personal jurisdiction is established

by the laws of the forum state and must comport with constitutional due process.").

In *Fireman's Fund*, the Tenth Circuit Court of Appeals analyzed the issue of personal

jurisdiction and further explained that "New Mexico's long-arm statute, N.M. Stat. Ann. § 38-1-

16 (1971), 'is coextensive with constitutional limitations imposed by the Due Process Clause.'"

*Id.* (*citing Trujillo v. Williams*, 465 F.3d 1210, 1217 (10th Cir. 2006)).  In other words, the long-

arm statutory requirements effectively collapse into the second, constitutional analysis

concerning due process.  *Silver v. Brown*, 382 F. App'x 723, 728 (10th Cir. June 14, 2010)

(unpublished) (citation omitted); *see also Marcus Foods*, 671 F.3d at 1166 (no need to conduct a

statutory analysis apart from the due process analysis).  Moreover, the New Mexico Court of

Appeals recently observed that "it is no longer necessary to determine whether a defendant has committed one of the acts enumerated by our long-arm statute." *M.R. v. SereniCare Funeral Home, LLC*, 296 P.3d 492, 494-95 (Ct. App. 2012), *cert. denied*, 299 P.3d 862 (N.M. Jan. 2, 2013).  Instead, the Court undertakes "a single search for the outer limits of what due process permits." *Id.* (citation omitted).

Personal jurisdiction can be general or specific.  Moreover, minimum contacts may support either general or specific personal jurisdiction.  *Fireman's Fund*, 703 F.3d at 493 (citation omitted).

### A.      General Personal Jurisdiction

General jurisdiction requires that the defendant have contacts with the forum "so continuous and systematic as to render [it] essentially at home in the forum state." *Id.* (citation omitted).  "The Supreme Court has established [general jurisdiction] as being a high threshold." *Trierweiler v. Croxton and Trench Holding Corp.*, 90 F.3d 1523, 1543 (10th Cir. 1996) (citation omitted).  General jurisdiction, in contrast with specific jurisdiction, is not related to the events giving rise to the suit.  As a result, courts impose a more stringent minimum contacts test to show "continuous and systematic general business contacts." *Benton v. Cameco Corp.*, 375 F.3d 1070, 1080 (10th Cir. 2004), *cert. denied*, 544 U.S. 974 (2005)..

The Tenth Circuit Court typically addresses four factors in deciding whether general jurisdiction has been established: (1) whether the defendant company solicits business in the state through a local office or agent; (2) whether the defendant company sends agents into the state on a regular basis to solicit business; (3) the extent to which the defendant company holds itself out as doing business in the forum state, e.g., through ads, listings or bank accounts; and (4)

the volume of business conducted in the state by the defendant company.  *Kuenzle v. HTM Sport–Und Freizeitgeräte AG*, 102 F.3d 453, 457 (10th Cir. 1996) (citations omitted).

Based on the affidavit testimony, the Court is unpersuaded that general personal jurisdiction exists, or that Defendant has contacts with New Mexico "so continuous and systematic as to render [it] essentially at home in the forum state."  *See Fireman's Fund*, 703 F.3d at 493 (*quoting Goodyear Dunlop Tires Operations, S.A. v. Brown*, __ U.S. __, 131 S.Ct. 2846 (2011)); *Shrader v. Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011) ("commercial contacts here must be of a sort that approximate physical presence in the state") (quotations omitted).

It is undisputed that Plaintiff and Defendant had business dealings and communications off and on over a period of 15 years regarding the translation, manufacture, distribution, and sales of their respective products.  It is further uncontested that in 2008, Defendant initiated contact with Plaintiff in soliciting the Agreement concerning Plaintiff's Dominion game that is the subject of this breach of contract lawsuit.  However, Defendant did not solicit business with Plaintiff through a local office or agent.  Indeed, Defendant has no local office or agent in New Mexico.  In addition, Defendant's agents or employees did not come to New Mexico on a regular basis to conduct business.  Instead, the undisputed affidavit testimony confirms that none of Defendant's agents or employees ever visited New Mexico.

Further, Defendant did not hold itself out as doing business in New Mexico through marketing efforts, advertisements, or bank accounts.  Defendant has no bank accounts in New Mexico, and Plaintiff set up a bank account in Germany to facilitate payments to one another at Defendant's request.  While both companies profited over the years from their translation and distribution of one another's games, the volume of business conducted in New Mexico by Defendant does not compel a finding that the Court has general personal jurisdiction.  *See*

13

*Kuenzle*, 102 F.3d at 457 (setting out factors in determining if a nonresident company's contacts are "continuous and systematic").

In reviewing the totality of the contacts between Defendant and the forum state, the Court does not find that Defendant's commercial contacts in New Mexico demonstrated "approximate physical presence" in this State.  For example, there is no evidence that Defendant was authorized to conduct business in New Mexico.  It has no office, employees, or agents here. Defendant owns no property in New Mexico and has no telephone listing here.  Moreover, there are no facts showing that Defendant advertised its products in New Mexico through Plaintiff's distribution of Defendant's games.

Defendant's contacts with New Mexico fall short of the facts necessary to meet the high burden of demonstrating general jurisdiction.  *See, e.g., Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-17 (1984) (finding Texas courts lacked general jurisdiction over the defendant company despite the company having spent more than $4 million to purchase 80% of its helicopters and parts from Texas sources over a 7-year period and despite the company having sent its pilots, management, and maintenance personnel for training in Texas over a period of years); *Shrader*, 633 F.3d at 1243 (noting that "engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders") (citation omitted).  Therefore, the Court finds that Defendant did not have sufficient systematic contacts with New Mexico to warrant general personal jurisdiction.

B.    <u>Specific Jurisdiction</u>

The specific jurisdiction inquiry is described as two-fold.  *Marcus Foods*, 671 F.3d at 1166.  First, the Court determines if the defendant has such minimum contacts with the forum state "that [the company] should reasonably anticipate being haled into court there."  *World-*

*Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).  As part of this analysis, the Court considers whether the defendant purposefully directed its activities at residents of the forum, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985), and if the plaintiff's claim arises out of or results from "actions by the defendant himself that create a substantial connection with the forum state," *Asahi Metal Indus. Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 109 (1987).  The purposeful availment requirement ensures that a defendant will not be subject to personal jurisdiction "solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third party

Second, if sufficient minimum contacts exist, the Court determines whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice."  *Asahi Metal*, 480 U.S. at 113 (citations omitted).  Stated differently, the Court decides if its exercise of personal jurisdiction over a defendant with minimum contacts is "reasonable" in light of the circumstances surrounding the case.  *Id.  See also Dudnikov*, 514 F.3d at 1071.

In *Newsome v. Gallacher*, 722 F.3d 1257, 1271 (10th Cir. 2013), the Tenth Circuit Court observed that if a plaintiff satisfies its burden of demonstrating the existence of minimum contacts, the defendant must then show that exercising personal jurisdiction "would nonetheless 'offend traditional notions of fair play and substantial justice.'" (citations omitted).  The Tenth Circuit Court further commented that such cases are rare.  To meet its burden, a defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Id.* (citations omitted).

1.      Minimum Contacts

The Court decides that Plaintiff has established Defendant has minimum contacts with New Mexico for purposes of specific jurisdiction, particularly at this stage of the litigation when Plaintiff's burden is light.  In 2008, Defendant's representatives had conversations about the Dominion game with Mr. Tummelson at a trade conference in Ohio.  Upon Mr. Tummelson's return to New Mexico, Defendant, from Germany, initiated contact with Plaintiff on Plaintiff's business telephone in New Mexico.  Defendant solicited Plaintiff for an agreement to license Dominion for distribution in Germany in the German language.  At Defendant's request, Mr. Tummelson sent Mr. B. Brunnhofer a contract form to execute.  On September 1, 2008, Plaintiff and Defendant executed the Agreement.

According to the undisputed facts, Mr. Tummelson and Mr. B. Brunnhofer had a number of communications, by telephone, fax, and email, concerning the terms of the Agreement and payment of invoices.  *See AST Sports Sciences*, 514 F.3d at 1059 (phone calls, letters, faxes, and emails provide evidence that a defendant pursued a continuing relationship with a plaintiff). Some of the communications were made from Defendant to Mr. Tummelson at his addresses or business telephone numbers in New Mexico.  Mr. Tummelson sent Dominion files, as requested and in accordance with the Agreement, from New Mexico to Defendant in Germany for translation.   The Agreement spanned a period of about five years during which Plaintiff and Defendant maintained a continuous business relationship and ongoing communications regarding the Dominion Agreement.

In addition, the Agreement specifies that it will be interpreted "with the laws of the UNITED STATES OF AMERICA, state of NEW MEXICO."  Agreement (emphasis in original).  Defendant could have insisted on a different choice of law provision, as it apparently

had done with respect to at least one other contract with Plaintiff, but it did not.  Defendant

signed a contract agreeing that the governing law would be New Mexico law.  Although the

parties did not explicitly set out a choice of forum clause, it could reasonably be inferred that

they chose to litigate in the forum where the selected choice of law applied.  While not

determinative, the choice of law clause gives the appearance that the parties intended to avail

themselves of the New Mexico courts in the event of a dispute.

Moreover, Defendant makes no argument that its dealings with Plaintiff regarding the

Dominion Agreement were merely random or attenuated contacts, nor could it do so.

Defendant's communications with Plaintiff that resulted in an Agreement were ongoing for a

period of years.  The parties' communications concerning the Dominion Agreement cannot be

described as fortuitous or isolated in nature.  *See Benally v. Amon Carter Museum of W. Art*, 858

F.2d 618, 625 (10th Cir. 1998) (purposeful availment requirement ensures that a nonresident

Defendant will not be subject to the laws of a jurisdiction based on nothing more than "random,

fortuitous, or attenuated contacts, or the unilateral activity of another party or a third party")

(citations omitted).

Further, in evaluating the purposeful availment requirement, the Court "must examine the

parties' prior negotiations and contemplated future consequences, along with the terms of the

contract and the parties' actual course of dealing."  *Marcus Food*, 671 F.3d at 1166-67 (citation

omitted).  The parties engaged in negotiations, initiated by Defendant, culminating in a written

Agreement that was intended to last for years.  Defendant communicated with Mr. Tummelson

or Plaintiff at its office in New Mexico on a regular basis.  Defendant received financial benefits

from Plaintiff as a result of the Agreement Defendant solicited.  *See id.* (while agreements alone

are not necessarily sufficient to establish minimum contacts, "parties who reach out beyond one

state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for the consequences of their activities.")

Based on these facts, the Court concludes that Defendant could reasonably have anticipated being haled into court in New Mexico.  Moreover, Defendant purposefully directed its activities at a New Mexico company when it solicited through Mr. Tummelson a licensing agreement concerning Plaintiff's game, Dominion.  Further, there is no question that Plaintiff's claim for breach of contract derives from a transaction of business that Defendant initiated, solicited, and negotiated with Plaintiff, a New Mexico company.  In other words, this lawsuit results from Plaintiff's alleged injuries that arose out of business negotiations with Defendant related to Dominion.  Thus, the parties' actual course of dealings with respect to the Dominion Agreement was sufficiently extensive to satisfy the minimum contact inquiry.

2.      Reasonableness of Jurisdiction

The Court next examines if the exercise of jurisdiction over a Defendant with minimum contacts offends "traditional notions of fair play and substantial justice."  At this stage, Defendant "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."  *Newsome*, 722 F.3d at 1271 (*citing Burger King*, 471 U.S. at 477); *Dudnikov*, 514 F.3d at 1080 (same).  In deciding this question, the Court addresses the following factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states or foreign nations in furthering fundamental social policies.

*Dudnikov*, 514 F.3d at 1080 (citation omitted).

Only the first of the five factors favors Defendant since Defendant is based in Germany with no presence in New Mexico. "When the defendant is from another country, this concern is heightened," and "great care and reserve" should be employed before exercising personal jurisdiction over a foreign defendant. *AST Sports Science,* 514 F.3d at 1061 (citation omitted). Still, "modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Id.* (citation omitted). Defendant has demonstrated an ability to travel to the United States for numerous trade conferences and has communicated with Plaintiff in New Mexico very easily by telephone and email. Thus, the Court does not conclude that it would be "gravely difficult" for Defendant to travel to New Mexico or communicate with Defendant's New Mexico counsel for purposes of defending this litigation.

The second two factors strongly favor Plaintiff. New Mexico has an interest in resolving the dispute since the Agreement requires application of New Mexico law, and Plaintiff, a New Mexico company, alleges an injury. Litigating this matter in New Mexico where Plaintiff is located is more convenient to Plaintiff and, depending on the outcome of the case, could provide effectual relief.

The fourth factor favors Plaintiff because the forum state is the most efficient place to litigate the dispute where the witnesses necessary to attempt to prove Plaintiff's case are located and because New Mexico law governs the case. The fifth factor is neutral or may favor Plaintiff to some degree. While Defendant is a foreign company with no presence in New Mexico, Defendant elected to conduct business with a New Mexico company, and the alleged breach of contract arose out of that business relationship. Based on the parties' agreement to apply New

Mexico law, it appears that the exercise of jurisdiction over a German company would not interfere with Germany's sovereignty.

Defendant relies heavily on *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448 (4th Cir. 2000), in support of its position that the Court cannot maintain personal jurisdiction over the German business. Defendant argues that the facts in *Diamond Healthcare* present several parallels to the present circumstances. Reply at 10. Defendant emphasizes the Fourth Circuit Court's holding that the Ohio defendant lacked sufficient minimum contacts with the Virginia plaintiff to satisfy due process requirements for personal jurisdiction in a Virginia court. The Court finds *Diamond Healthcare* distinguishable. Significantly, the Virginia plaintiff in *Diamond Healthcare* initiated the contract between the parties. *Id.* at 451. Here, Defendant approached Plaintiff to solicit the Dominion Agreement. The Fourth Circuit Court observed that the contract in *Diamond Healthcare* represented the product of the Ohio defendant's "favorable response to Diamond Healthcare's unsolicited invitations for performance of a project in Ohio, which the parties agreed would be regulated under Ohio law . . . ." *Id.* As noted already, Defendant, in contrast with the facts in *Diamond Healthcare*, agreed that New Mexico law would apply to disputes as to the Dominion Agreement. In view of the distinguishable facts in this case, the Court is not convinced that the Fourth Circuit Court's nonbinding decision mandates adoption of Defendant's position.

The Court reviewed all of the factors and arguments of the parties, and is not persuaded that Defendant has shown that the exercise of jurisdiction would offend the traditional notions of fair play and substantial justice. Given the parties' business relationship and business dealings, even if considered only in terms of the Dominion Agreement, the Court concludes that its jurisdiction over Defendant is not unreasonable.

IT IS THEREFORE ORDERED that:  (1) the MOTION OF DEFENDANT HANS IM GLÜCK VERLAGS GmbH TO DISMISS THE COMPLAINT FOR LACK OF PERSONAL JURISDICTION (Doc. No. 8) is DENIED; and that (2) PLAINTIFF'S REQUEST FOR LEAVE OF COURT TO FILE A SURREPLY (Doc. No. 22) is DENIED as moot.


_____
SENIOR UNITED STATES DISTRICT JUDGE